UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARTE KING,  :  | Civil Action No. 09-1554 (KSH) |
| Plaintiff,  :  |  |
| :  | **MEMORANDUM** |
| v.  :  | **ORDER** |
| :  |  |
| JON S. CORZINE, et al.,  :  |  |
| Defendants.  :  |  |

IT APPEARING THAT:

1. On April 3, 2009, the Clerk docketed the plaintiff's civil complaint, together with a duly executed application to prosecute this matter in forma pauperis and a motion to appoint pro bono counsel. See Docket Entry No. 1. The complaint named the following persons as defendants in this matter: (a) "Governor Jon S. Corzine" ("Corzine"); (b) "Commissioner George Hayman" ("Hayman"); (c) "Mr. Sapp, Assistant Administrator of the Northern State Prison" ("Sapp"); (d) "Capt. Hernandez" ("Hernandez"); (e) "Lt. Ghibah" ("Ghibah"); (f) "Sgt. Kearner" ("Kearner"); (g) "Sgt. Szuba" ("Szuba"); (h) "Sgt. Wallace" ("Wallace"); (i) "Officer Tisdale" ("Tisdale"); (j) "Hearing Officer McGovern" ("McGovern"); (k) "1-50 Unknown Officers" ("Unknown Officers"); and (l) "1-50 Unknown Employees of the Department of Corrections" ("Unknown Employees"). See id. at 1-2.

2. In addition, in the body of his complaint, the plaintiff stated allegations against "Administrator Sherrer" ("Sherrer"), which suggests the plaintiff's intent to name Sherrer as defendant in this action. See id. at 3.

3. The complaint states no allegations against defendants Corzine, Szuba, Unknown Officers and Unknown Employees. See generally, Compl. Moreover, the allegations against defendants Sherrer and Hayman are limited to statements asserting that these defendants are liable to the plaintiff because of their supervisory positions. See id. at 3, 5.

4. The plaintiff seems to assert the following facts: (a) prior to September 3, 2008, the plaintiff filed a legal action, of unspecified nature, in an unspecified federal court; (b) on September 3, 2008, the plaintiff was present at the prison yard, when a riot arose; (c) the plaintiff was initially removed to segregated confinement, then to a dry cell, and then to an observation cell; (d) thereafter, the plaintiff was charged with encouraging the riot; (e) on the basis of these charges, the plaintiff had an administrative hearing, with respect to which he was denied a polygraph test and informed that the witnesses he requested were not located; (f) as a result of the hearing, the plaintiff was sanctioned to 90-day loss of recreational privileges, 180 days of segregated confinement and loss of good time credit; (g) prior to his entry in segregated confinement, the plaintiff spent one week in a flooded cell with no lights or running water; (h) shortly thereafter, the plaintiff was charged with a cell-phone related violation; (i) in connection with these charges, the plaintiff had another administrative hearing, during which he pled guilty to the charges; (j) the plaintiff's cell was searched on numerous occasions during the period of the cell-phone related proceedings; (k) when the plaintiff was interviewed about his administrative grievances,

        one of the interviewers was equipped with a large container of mace; (l) the plaintiff wrote more administrative grievances asserting that he was experiencing fears of potential injury, which resulted in another rounds of plaintiff's interviews, during which the plaintiff was assured that he had no reason to fear for his safety; and (m) the plaintiff incurred no physical injuries during his stay in the facility where the above-stated events took place and was eventually transferred to another correctional facility. See id. at 7-9. The plaintiff asserts that his riot-related and cell-phone-related administrative proceedings were retaliatory, that his conditions of confinement amounted to cruel and unusual punishment, and that he suffered injury in the form of emotional distress and fear. See id. 3-9.

5.    With regard to particular defendants, the plaintiff's statements against defendants Hernandez and Ghibah are limited to the assertion that these defendants interviewed the plaintiff about his administrative grievances and/or offered him assurances as to his safety. See id. at 9. The plaintiff's allegations against defendant Wallace are limited to the statement that Wallace testified during the plaintiff's administrative hearing. See id. at 8. The plaintiff's allegations against defendant Tisdale are limited to the assertion that Tisdale exercised excessive force with regard to inmates other than the plaintiff and also testified during the plaintiff's administrative hearing. See id. at 7-9. Finally, the plaintiff's allegations include the assertion that defendant McGovern denied the plaintiff's request for polygraph test, and that defendant Kearner was equipped with a large container of mace. See id. at 8-9. However, the plaintiff's allegations against defendants McGovern and Kearner can also be construed as asserting that these defendants initiated

      the plaintiff's riot-related and/or cell-phone-related administrative proceedings in retaliation for the plaintiff's ongoing litigation.  Moreover, these allegations could also be construed as suggesting that the plaintiff was: (a) denied an opportunity to call witnesses for the purposes of his riot-related administrative hearing; (b) found him guilty on administrative charges without any credible evidence; and (c) subjected to conditions of confinement violating the plaintiff's Eighth Amendment rights.  Finally, while the plaintiff's allegations against defendant Sapp assert that Sapp: (a) holds a supervisory position; (b) denied the plaintiff's administrative appeal as to the outcome of the riot-related charges; and (c) was the addressee of the plaintiff's later investigated grievance that the plaintiff was experiencing fear about future injury, these statements also can be construed as asserting that Sapp subjected the plaintiff to conditions of confinement violating the plaintiff's Eighth Amendment rights.  See id. at 5, 8-9.

6.    The plaintiff's allegations against  defendants Corzine, Szuba, Unknown Officers and Unknown Employees will be dismissed for failure to state a claim.  Personal involvement by a defendant is an indispensable element of a valid legal claim; such personal involvement may exist only where the named defendant violated the plaintiff's rights. See Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995); Sample, 885 F.2d at 1110; Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Conversely, where no personal involvement by the defendant is asserted, the plaintiff's claim against that defendant is subject to dismissal.  Rode, 845 F.2d at 1207.  Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Id. at 1965 n.3. . . . "[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough

heft to 'sho[w] that the pleader is entitled to relief.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1966 (2007). "[Hence,] factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 & n.3. Since the plaintiff's complaint contains no allegations against defendants CORZINE, Szuba, Unknown Officers and Unknown Employees, these claims will be dismissed, without prejudice.

7. The plaintiff's allegations against defendants Sherrer and Hayman will similarly be dismissed without prejudice. It is well settled that liability under § 1983 may not be based on the doctrine of respondeat superior. See Durmer v. O'Carroll, 991 F.2d 64, 69 n. 14 (3d Cir. 1993). Instead, the plaintiff must show that the official's conduct caused the deprivation of a federally protected right. See Kentucky v. Graham, 473 U.S. 159, 166 (1985). More particularly, the plaintiff must allege that the defendant was personally involved in the deprivation. See West v. Atkins, 487 U.S. 42, 48 (1988). Personal involvement can be shown if the supervisor directed the actions of supervisees that caused the alleged wrong or actually knew of the actions and acquiesced in them, or actually coined the policies that resulted in the alleged wrong. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Since the plaintiff makes no such allegations, his claims against defendants Sherrer and Hayman will be dismissed.

8. The plaintiff's allegations against defendant Tisdale based on alleged excessive force exercised by Tisdale against inmates other than the plaintiff will be dismissed, with prejudice, for lack of standing to sue. Under the "next friend" doctrine, standing is allowed to a third person so this third person could file and pursue a claim in court only on behalf of someone who is unable to do so on his or her own. The doctrine dates back

to the English Habeas Corpus Act of 1679 and provides a narrow exception to the "case in controversy" requirement set forth in the Article III of Constitution.  See Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990).  The Whitmore Court set out two requirements that should be met by the one seeking to qualify for "next friend" standing: (1) "the 'next friend' must be truly dedicated to the best interests of the person on whose behalf [(s)he] seeks to litigate" (and it has been further suggested that a "'next friend' must have some significant relationship with the real party in interest"; and (2) "the 'next friend' must provide an adequate explanation--such as inaccessibility, mental incompetence, or other disability--why the real party in interest cannot appear on his own behalf to prosecute the action."  Id. at 163-64.  The burden is on the "next friend" to justify his/her status and, thereby, to obtain the jurisdiction of the federal courts.  See id. at 164.  In view of these requirements, the plaintiff cannot be recognized as "next friend" of any inmate allegedly assaulted by Tisdale, since the complaint has no information as to whether the plaintiff is "truly dedicated to the best interests" of such other inmates, nor does it indicate that any other inmate is unable to pursue his own claim(s).  Accord Coalition of Clergy v. Bush, 310 F.3d 1153, 157-59 (9th Cir. 2002) (providing a thorough discussion of the "next fiend" case law). Since the plaintiff expressly asserts that Tisdale's exercise of force was used against inmates other than the plaintiff, his allegations to that effect will be dismissed, with prejudice, for lack of standing.

9. The plaintiff's allegations against defendants Tisdale and Wallace based on these defendants' testimony during the plaintiff's administrative hearing will also be dismissed, without prejudice, since the plaintiff asserts no wrongdoing by these defendants but only

the fact that these defendants submitted their testimonies and that, in the plaintiff's opinion, the testimonies were "conflicting," see Docket Entry Bo. 1, at 8, since there is no constitutional right to non-conflicting testimony of witnesses.

10. The plaintiff's allegations that he was denied a polygraph test with respect to his administrative hearings will be dismissed with prejudice. Due process protects against arbitrary action in prison disciplinary proceedings but provides less protection than in criminal prosecutions. See Ponte v. Real, 471 U.S. 491, 495 (1985). Due process ensures inmates have a right to call and present witnesses and documentary evidence before a prison disciplinary board, but even this right may be denied when consistent with institutional safety and correctional goals. See id., see also Superintendent, Massachusetts Correctional Institute v. Hill, 472 U.S. 445, 454 (1985). The limited right afforded prisoners to call and present witnesses and documentary evidence does not encompass a right to take a polygraph examination. See Ponte, 471 U.S. at 495. Accordingly, prison officials did not deprive the plaintiff of due process in denying his request to take a polygraph test. See id.; see also Counterman v. Fauver, 1989 U.S. Dist. LEXIS 16576 (D.N.J. Nov. 24, 1989). Therefore, the plaintiff's polygraph-test-related claims will be dismissed with prejudice.

11. Similarly, the plaintiff's allegations asserting that his cell was searched a number of times during his cell-phone-related administrative proceedings will be dismissed. The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. Reasonableness under the Fourth Amendment "depends on all of the circumstances surrounding the search or

seizure and the nature of the search or seizure itself." Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 618 (1988) (quoting United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985)). "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Id. at 619 (quotation marks and internal citation omitted). In Hudson v. Palmer, 468 U.S. 517, 530 (1984), a prisoner argued that a cell search conducted to harass him was unreasonable because a prisoner has a reasonable expectation of privacy not to have his cell, locker, personal effects, person invaded for such a purpose. Id. at 529. The Supreme Court rejected the claim because "prisoners have no legitimate expectation of privacy." Id. at 530. The Court observed that:

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. . . . [S]ociety would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. . . . [I]t is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

Id. at 527-28 (footnotes, citations and internal quotation marks omitted); see also Bell v. Wolfish, 441 U.S. 520, 558-560 (1979) (reaching the same conclusion with respect to detainees other than convicted prisoners). That being said, searches conducted as "calculated harassment unrelated to prison needs" may violate the Eighth Amendment. See Hudson v. Palmer, 468 U.S. at 530; see also Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993). Yet, while numerous searches conducted within a short period of time may suggest intent to harass an inmate, see Scher v. Engelke, 943 F.2d

921, 923-24 (8th Cir. 1991) (finding that ten searches of an inmate's cell within a nineteen-day period constituted "cruel and unusual punishment"), cert. denied, 503 U.S. 952 (1992), repetitive searches which may seem to be harassment to the inmate do not violate the Eighth Amendment if each search is conducted for a legitimate purpose. See Proudfoot v. Williams, 803 F. Supp. 1048 (E.D. Pa. 1992) (finding that three searches within fourteen days did not violate Eighth Amendment when each search was made for a legitimate purpose). Since the plaintiff asserted that his cell was "ransacked repeatedly" but did not assert extreme frequency of the searches and indicates that the searches took place solely during the period related to the cell-phone proceedings (stemming, seemingly, from the plaintiff's illegal possession of a cell phone), hence suggesting that the searches were conducted for a legitimate penological reason, these allegations will be dismissed, without prejudice. In the events the plaintiff's facts so allow, the plaintiff may clarify his claim by asserting extreme frequency of the searches and lack of legitimate purpose for such searches.

12. Analogously, the plaintiff's allegations that defendant Kearner was equipped with a large container of mace during the plaintiff's interview will be dismissed. Acts of verbal harassment cannot qualify as violations of an inmate's constitutional rights. See Stepney v. Gilliard, 2005 U.S. Dist. LEXIS 31889, at *19 (N.J.D. Dec. 8, 2005) ("[V]erbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms") (quoting Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998), and citing Collins v. Graham, 377 F. Supp. 2d 241, 244 (D. Me. 2005)); see also Robinson v. Taylor, 2005 U.S. Dist. LEXIS 20951, at

   *8-9 (D. Del. Sept. 26, 2005) ("[M]ere verbal harassment does not give rise to a constitutional violation[; even if it is] inexcusable and offensive, [it] do[es] not establish liability under section 1983) (quoting McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) and citing Moore v. Morris, 116 Fed. App'x 203, 205 (10th Cir. 2004); Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (dismissing prisoner's claim that defendant laughed at prisoner and threatened to hang him)); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 187-89 (D.N.J. 1993)); Abuhouran v. Acker, 2005 U.S. Dist. LEXIS 12864, at *15 (E.D. Pa. June 29, 2005) ("It is well established . . . that . . . verbal harassment, . . . standing alone, do[es] not state a constitutional claim") (citing Dewalt v. Carter, 224 F.3d 607, 612 (7th Cir. 1999); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999); Maclean v. Secor, 876 F. Supp. 695, 698 (E.D. Pa. 1995)); Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979). Analogously, acts of visual harassment cannot qualify as violations of an inmate's constitutional rights.  See Banda v. Corzine, 2007 U.S. Dist. LEXIS 80932, at *38-39 (D.N.J. Nov. 1, 2007) (dismissing allegations that defendants violated the inmate's rights by "brandishing 'Riot Guns'") (citing Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2283-84 (1998)).  Therefore, the plaintiff's allegations based on Kearner's possession of a large can of mace will be dismissed with prejudice.

13. The plaintiff's allegations asserting denial of recreation will also be dismissed.  The plaintiff's allegations in regard to recreation may be construed as an Eighth Amendment claim. Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and

personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993). However, the Constitution "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Thus, the Eighth Amendment prohibits conditions that unnecessarily and wantonly inflict pain, or are grossly disproportionate to the severity of the crime warranting imprisonment. See Rhodes, 452 U.S. at 346-47. The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Id. at 346. "[M]eaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'" Peterkin v. Jeffes, 855 F.2d 1021, 1031 (3d Cir. 1988) (quoting Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)); see also Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996) ("[d]eprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation"); Patterson v. Mintzes, 717 F.2d 284, 289 (6th Cir. 1983); Campbell v. Cauthron, 623 F.2d 503, 506-07 (8th Cir. 1980); Kirby v. Blackledge, 530 F.2d 583, 587 (4th Cir. 1976); Loe v. Wilkinson, 604 F. Supp. 130, 135 (M.D. Pa. 1984). However, the lack of exercise can only rise to a constitutional level "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened." Spain, 600 F.2d at 199. Thus, a constitutional violation will occur when the deprivation of exercise extends for a prolonged period of time and tangible physical harm resulting from the lack of exercise is demonstrated and the litigant shows deliberate indifference on the part of prison officials to the progression of atrophy. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). Here,

the complaint makes no such allegations. Therefore, the plaintiff's claims based on denial of recreation will be dismissed without prejudice.

14. Finally, the plaintiff's assertion that he was experiencing fear about potential physical injuries will be dismissed, with prejudice. Prison officials have a duty under the Eighth Amendment to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. at 526-27). To state a failure-to-protect claim under 42 U.S.C. § 1983, an inmate must show objectively that he was "incarcerated under conditions posing a substantial risk of serious harm" and that the defendant knew of and disregarded that risk. See Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. Here, the plaintiff's contentions indicate that he suffered no injury and, short of pointing to his anxiety, the plaintiff fails to allege a single fact indicating that his health/life was in danger, or that the defendants either expressly intended to cause him harm, or that they knew and are disregarded the risk of such harm. Therefore, these allegations will be dismissed with prejudice for failure to state a claim upon which relief can be granted. See Rouse v. Pauliilo, 2006 U.S. Dist. LEXIS 17225 (D.N.J. Apr. 5, 2006) (citing Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999)); Pilkey v. Lappin, 2006 U.S. Dist. LEXIS 44418, at *45 (D.N.J. June 26, 2006) ("Plaintiff's [anxiety paraphrased as his claim of] potentially diminished safety fail[s] to state a claim upon which relief may be granted"); Patterson v. Lilley, 2003 U.S. Dist. LEXIS 11097 (S.D.N.Y. June 20, 2003) (defendants

could only be held deliberately indifferent to an existing condition, not a speculative future injury).

15. The plaintiff's motion for appointment of pro bono counsel will be denied, without prejudice, since such appointment appears unwarranted at this initial stage of litigation. Indigent persons raising civil rights claims have no absolute constitutional right to counsel. See Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997). In determining whether to appoint counsel, a court should consider several factors:

> As a preliminary matter, the plaintiff's claim must have some merit in fact and law. ... If the district court determines that the plaintiff's claim has some merit, then the district court should consider the following factors:
> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the amount a case is likely to turn on credibility determinations;
> (5) whether the case will require the testimony of expert witnesses;
> (6) whether the plaintiff can attain and afford counsel on his own behalf.

Parham, 126 F.3d at 457-58 (citing Tabron v. Grace, 6 F.3d 147, 155-56, 157 n.5 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994)). This list of factors is not exhaustive, but instead should serve as a guide post for the district courts. "Correspondingly, courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." Id. at 458 (citing Tabron, 6 F.3d at 157). Analysis of these factors reveals that appointment of counsel is not necessary at this juncture. As the plaintiff's submission indicates, the plaintiff appears able to present his claim in a clear and articulate manner. He demonstrates an understanding of his claim and the issues remaining in this matter do not appear complex.

Also, the plaintiff has ample ability to investigate the records pertinent to his claims, since he can utilize discovery requests to obtain relevant records and information. Therefore, the plaintiff's application for appointment of counsel at the initial stages of litigation is premature.

IT IS therefore on this 5th day of May, 2009,

ORDERED that the plaintiff's application to proceed in this matter in forma pauperis is granted; and it is further

ORDERED that the Clerk shall file the complaint; and it is further

ORDERED that the plaintiff's claims against defendants Corzine, Hayman, Hernandez, Ghibah, Szuba, Wallace, Tisdale, Unknown Officers and Unknown Employees are dismissed in accordance with the terms of this Order, and the Clerk shall terminate these persons as defendants in this action; and it is further

ORDERED that the plaintiff's allegations based on the doctrine of respondeat superior, the rights of third parties, alleged searches of the plaintiff's cell, alleged denial of polygraph test, alleged conflicting testimonies submitted during his administrative hearing, alleged visual harassment, alleged lack of recreation and alleged failure to protect are dismissed in accordance with the terms of this Order; and it is further

ORDERED that the plaintiff's claims asserting undue conditions of confinement, retaliatory instigation of administrative proceedings and violation of the plaintiff's due process rights to call witnesses and to be sanctioned upon "some evidence" in the record supporting the decision to revoke good time credits may proceed past the sua sponte dismissal stage; and it is further

ORDERED that the Clerk shall issue summons, and the United States Marshal shall serve a copy of the amended complaint, summons, and this Order upon remaining defendants Sapp, Kearner and McGovern, pursuant to 28 U.S.C. § 1915(d); and it is further

ORDERED that the remaining defendants shall file and serve a responsive pleading within the time specified in Federal Rule of Civil Procedure 12, pursuant to 42 U.S.C. § 1997e(g)(2); and it is further

ORDERED that the plaintiff is assessed a filing fee of $350.00 which shall be deducted from his prison account pursuant to 28 U.S.C. § 1915(b)(2) in the manner set forth below, regardless of the outcome of the litigation; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b)(1)(A), the plaintiff is assessed an initial partial filing fee equal to 20% of the average monthly deposits to the plaintiff's prison account for the six month period immediately preceding the filing of the complaint; when funds exist, the agency having custody of the plaintiff shall deduct said initial fee from the plaintiff's prison account and forward it to the Clerk; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b)(2), until the $350.00 filing fee is paid, each subsequent month that the amount in the plaintiff's prison account exceeds $10.00, the agency having custody of Plaintiff shall assess, deduct from the plaintiff's account, and forward to the Clerk payments equal to 20% of the preceding month's income credited to the plaintiff's prison account, with each payment referencing the docket number of this action; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(b), the Clerk shall forward a copy of this order by regular mail to the Attorney General of the State of New Jersey and the agency having custody of the plaintiff; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(e)(1) and § 4(a) of Appendix H of the Local Civil Rules, the plaintiff may re-apply in writing to the assigned judge for the appointment of pro bono counsel in accordance with the factors set forth in Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994), which sets forth the requirements for eligibility for appointment of pro bono counsel.  The plaintiff is expressly advised that such appointment is neither guaranteed nor automatic; and it is further

ORDERED that, if at any time the plaintiff seeks the appointment of pro bono counsel, pursuant to Fed. R. Civ. P. 5(a) and (d), the plaintiff shall (1) serve a copy of the application for appointment of pro bono counsel by regular mail upon each party at his last known address, or, if the party is represented in this action by an attorney, upon the party's attorney at the attorney's address, and (2) file a certificate of service with the application for pro bono counsel; and it is finally

ORDERED that the Clerk shall serve a copy of this order, by regular mail, upon the plaintiff.

/s/ Katharine S. Hayden
**Katharine S. Hayden
United States District Judge**